I'll call the second case of the morning. Zilma Loeb-Defever v. Mako and other parties. Mr. Dortch, you get to go first. Good morning, Judge Southwick. How are you? We're doing well. Good to have both of you with us. I'm sorry that we had to postpone. No, thank you. Thank you for accommodating my needs, Judge. Judge, this is a relatively simple, very complicated case. I don't know another way to say it. Really, it's come down to three issues here. Number one is that the district court, after the Fifth Circuit's ruling affirming the judgment of no fees, did the district court have any jurisdiction to thereby grant fees after the fact? The second one would be if the court, the district court, Judge Hanks, did have the authority to grant fees, did he do so appropriately under the Fogarty Standard of the Copyright Act? And the third issue is, if he had jurisdiction to grant fees, if he did it right or wrong under the Fogarty Act, should he have explained it according to the rules, specifically Federal Rules Civil Procedure 52A1? So I'm going to go in these orders, Your Honors. Number one is, did the court, Judge Hanks, after the Fifth Circuit's ruling on the prior repeal, have jurisdiction to award fees at all? We do not believe, as outlined in our brief, that the court had any jurisdiction to do so. The court, Judge Hanks, when he ruled on six or on the eight summary judgments, ultimately ruling really on two of them and dismissing six of them, found in his order, specifically, that each party shall bear their own fees and costs, and then he included the Mother Hubbard-type language. That ruling was actually appealed by the defendants in this case. Let me just talk to them, Mr. George. Let's say there had been no appeal, and then we'll worry with the effect of the appeal. Let's say there'd been no cross-appeal on that that was later dismissed, and instead you have the rest of the case as it proceeded, which is probably not quite fair to say, but the only issue raised by the appellant dealt with non-fee and cost issues. And once we ruled, would the District Court have had jurisdiction in that changed set of circumstances, then to deal with the collateral matter of fees and costs? Yes, Your Honor, because there'd be no finding from the other court, because it is collateral under the Moody case. It's a collateral issue, but here the judge actually... So let me stop you. The mere fact that the District Court put it in his initial opinion in order is not conclusive. I believe it is. I believe it is conclusive here, Your Honor, but in your fact scenario, it is not. Well, again, I'll have to hope we explain all the presence followed by an appeal. It's the cross-appeal that prevents further consideration by the District Court. Correct, Your Honor. That was a question. Yeah, well, I believe it does bring up an issue here because the defendants were unhappy with the ruling on the fees, and they appealed that ruling, which they had the issue square before the court. If Judge Hanks would have been silent on whether or not there were fees or costs awarded, which happens in almost every single case in federal court, then there wouldn't have been an issue, and we could have gone through a Rule 59 motion to amend the judgment to add the fees, which is the normal course of conduct here. But Judge Hanks jumped out in front of a 59, said there's no fees, there are no costs, Mother Hubbard language, everybody goes home, and it's a final judgment. That judgment should have either been amended or should have been appealed. And it was appealed. So you leave my presence behind, won't you now address the actual speaker that we have? I think I might have hit a button. I can still hear you and see you. Sorry, Your Honor, can you hear me now? Yes. Okay, I lost you for a second. Did you ask a question or do you want me to go forward? I had given you a changed set of circumstances. Just why don't you address the actual procedural situation of this case now? Now, the actual procedural situation here is that Judge Hanks made a ruling on the motion, made a ruling himself, jumped out ahead of any motion for fees and ruled there's no attorney's fees, there's no cost, which he perfectly had the right to do as the judge. And he found it was a final judgment. That final judgment, which says no fees and no cost, everybody bear their own, is what this very court, the Fifth Circuit, ruled was affirmed and sent back with no mandate to change anything. So the judgment which says each party bear their own fees and costs is a final non-appealable judgment before the court, which was affirmed by the Fifth Circuit. And therefore, we believe the Judge Hanks had no ability to change it after the fact, Your Honor. Well, give us the case law and the doctrine that you were trying to apply. I believe that we have provided the case law in there. The Moody case is the only case which is really possibly against us. The Moody case deals more with cost than with a judgment within the time period. And that judgment could have gone up on appeal, but either he chose not to, or it just wasn't before the court. But the judgment which says no fees and no cost is affirmed with no other mandate being issued. And that's the appellate record 8997. Well, getting back to my hypothetical again, the district, the Fifth Circuit ruling would have been exactly the same if there had not been a temporary appeal that got dismissed, it still would have affirmed. But you had indicated that if it had not been for that misstep of the cross-appeal, the mere affirmance by this court would not interfere with Judge Hanks then dealing with costs and fees once he gets the mandate. And Judge Southwick, you'll have to excuse me. I believe that your hypothetical said if Judge Hanks's original order would have been silent as to fees or cost. Well, a lot of people, including my colleagues, don't understand what I'm saying at times. So I was trying to be clear, and I wasn't, that you have everything else the same, but there was never a cross-appeal. Then I do not, then if that is, if everything's the same, but no cross-appeal, I don't think anything changes, Your Honor. We have a judgment that says no fees and no cost goes up. It wasn't amended by Judge Hanks, which he certainly could have done at the time. It goes up, it gets affirmed with no other mandate from this court going back. That's the, for lack of a better term, live judgment after the Fifth Circuit rules on it that's before the court. And therefore, there is no jurisdiction for the district court to change that. If Judge Hanks wanted to change it, he could have done it before the appeal, which is what happens every time. I keep working with my hypothetical change facts, never was a cross-appeal. What is your best case that holds that, that says even though cost and fees are collateral, the judge stands, but he has something like this in his order. He stands down while the appeal is going on. The appeal affirms, he gets the mandate. The district judge then does what judges often do after an affirmance. They do it with cost and fees. You have any case that says if that had been the scenario, there was no jurisdiction, authority, something for the district court to act? Your Honor, I do not have that off the top of my head. Or in your brief either, I might say. Do what, Your Honor? Or in your brief either, I might say, but keep going. Yes, Your Honor. If you don't have authority. It's one of those things that seems axiomatic. Let's say that is true. Let's say my premise is, or hypothetical is true, that the district court could have. Are you saying it's the mandate rule? Is it something else that prevents the district court from acting in the actual situation that we have? Yes, Your Honor. Here, the district court went beyond the scope of the mandate that came back from the Fifth Circuit. There was nothing from the Fifth Circuit that said for further proceedings commiserate with this order. There was nothing that said. Instead, we have a very simple opinion that says the final judgment of the district court is affirmed. That judgment is no fee. Your articulation of the mandate rule. What does it say? I'm looking at my brief here, Your Honor. We believe the mandate rule is exactly what you do. You follow the mandate. Here, the mandate was as simple as it could possibly be. Aren't there exceptions to the mandate rule? Yes, Your Honor. There would be an exception. For instance, if the court had awarded fees and said, we the court are awarding fees for the cost of the original trial and the original proceedings, and then I will consider appellate fees if they are reasonable and necessary. Later, the court could have done that. What we have here is that instead the court made a ruling on the fees. There was no motion to alter the judgment. And Judge Southwick, I hate to say the way it's normally done, but the way it's normally done in federal court is you have a final judgment. Within 14 days, you have a motion to amend that final judgment under Rule 59. Then the judge makes their ruling on that and issues a new final judgment or amended final judgment, and that's what goes up on appeal. I'd like to get back to the mandate rule. If your client did not appeal on the fee issue and our opinion did not address the fee issue, how is the fee issue implicated by the mandate? Well, the mandate rule requires, under United States v. Castillo, the district court on remand to effectuate our mandate and to do nothing else. Here the mandate was essentially as simple as it could be. The final judgment from the district court is affirmed. There was no mandate to change anything, to do anything. The mandate rule is basically the four corners rule of read the mandate, do what we say, and nothing else. Well, doesn't the mandate rule prohibit a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand? So that's really my questions following on Judge Southwick's hypothetical. If the issue of fees was not appealed by your client and the mandate or the ruling from this court do not address fees in any way, how is that an issue previously decided that would be covered by the mandate rule? Under your scenario, your honor, I believe that the the mandate rule applies here because the district court did find that there are no fees. Every party bear their own. Why would we appeal that? Because we like that ruling. Therefore, it doesn't go up on appeal. And then Mr. Edmonds does appeal that, dismisses his appeal, so it's not before the court. So an appeal that is dismissed is given up. Your question is, if we didn't address it in our appeal, couldn't it be addressed there but I believe it was addressed in your appeal when you affirm the court's decision that there are no fees and costs. Each party bear their own. Your mandate says we follow, not your mandate, your honor, the Fifth Circuit mandate says we, the Fifth Circuit, say the final judgment is affirmed. All right, counsel. Got something else for us? Yeah, going back, your honor, if we do get, if the court, if the Fifth Circuit does find that there is jurisdiction, then we have to go into the Fogarty factors. I believe it's very indicative here that the issue that everybody keeps saying is this was an express license issue, therefore it's frivolous, it's unreasonable. We have $1.5 million in fees by the defendants that they admit they billed on a frivolous, objectively unreasonable case that comes down to really a five-page contract. If the defendants believe the case was objectively unreasonable and frivolous, they could have filed an MSJ right after the ruling on the motion to dismiss when they're not under a 12B standard and then they could have gotten their ruling there. Instead, they knew the case had teeth and we went on for years of litigation, ran up $1.5 million in fees. We do not meet the Fogarty test here. It wasn't frivolous. There was a motion to dismiss that was denied by Judge Hanks. There was years of discovery, at least a year of discovery. The motivation here doesn't stand. There's no motivating factor by punishing or making someone who's a small LLC pay $500,000 to $1.5 million in fees. It was objectively reasonable or the defendants would have moved day one for summary judgment on the express license issue. That would have been one exhibit. They could have filed a five-page motion for summary judgment with one exhibit. And lastly, Your Honor, to hit the last point is I think that we seem to be talking on two different ends of the aisle between plaintiff and defendants here. We are not saying that Judge Hanks gave no explanation. He gave his Fogarty factors and went through them. He gave absolutely no explanation for the $500,000 other than, I hereby award $500,000. There's no explanation for the Lowe's star factors. There's no finding of reasonableness of the fees, the time incurred, the segregation issues. We believe that under Rule 52A1, Judge Hanks had to not only explain his reasoning, but his rhyme. He had to explain, here's why I find that $500,000 is justified, X is amount of summary judgment fees, X is the amount of deposition fees. But instead, he just took his red pen, divided by three, and did it that way. If a jury would have done that and just said, I'm taking a million bucks and dividing it by five and awarding it $200,000 a party, the court would have certainly looked at that lacking rhyme or reason and just being quick and dirty. Judge Hanks did the same thing. He just said it's $500,000 and that violates Rule 52A1. All right, Mr. Deutsch, we'll hear from you again. Thank you, Your Honor. Mr. Edmonds? May it please the Court, I'm John Edmonds. I'm working on behalf of the appellees. There are quite a few and I represent most of them. I'm going to take them in slightly different order. I don't think that the jurisdictional issue, the mandate rule issues counsel raised really raise an issue that should take up much of the Court's time. So I'm going to try to focus on the other issues. And if the Court has any questions, then I'll focus on that. The only thing I'll point out on the mandate rule issue is that I think it's clear cut under all the questions that Judge Southwick asked, which clearly were, and Judge Ramirez too, which shows the Court is already aware of the law. But the additional factor just to mention was that when the original judgment came out, of course, fees, statutory fees are ancillary to that. But just in the abundance of caution, the appellees filed their cross appeal. And then 14 days after that judgment was entered, they dutifully filed their fee motion, which the District Court denied saying, I'll take up fees after the merits appeal. And once the District Court had made it crystal clear that it had not ruled on statutory fees in its final judgment, and it was deferring the issue of statutory fees after the appeal, they withdrew that appeal as not to waste this Court's time with something that wasn't right, which we say was the appropriate thing to do. Counsel, even hindsight's not always 20-20, but it does seem to me that in reflection, maybe that appeal, if it had been continued, would have kept this issue from arising. I think if that appeal had continued, I expect this Court would have said your cross appeal was premature. And for your sake, we hope that you filed a timely motion for fees 14 days later, because if you didn't, then you're out of time to do that because you should have done that. Well, if you're right on mandate rule, that would be so. If Mr. George is right, that would not be so. I have a question, Mr. Edmonds. If the fees are purely collateral under Moody, then why file the cross appeal at all in an abundance of caution? Well, in hindsight, it was mistaken. And caution being that oppressive counsel like Mr. George would very likely say that based upon that order, that we couldn't get fees. But then once the Court made clear that it had not ruled on fees, then we better availed ourselves of law, realized the mistake had been made, and did not waste this Court's time with a moot cross appeal or really a premature cross appeal. Was the issue of whether the District Court had jurisdiction to go back to the fee issue, given the specific language in the judgment ever raised below? No, it was not. Although the District Court in, yeah, well, it was raised below in the sense that when we filed our, after the appeal, when we filed our renewed motion for appeal, the appellants raised this very same issue. And the District Court ruled against them on that. It's in a footnote in the order. And it's, let's see, it's 9136. And, you know, the Court cites Moody, as we had cited, and as Judge Southwick had mentioned too, that that original final judgment didn't affect the ancillary issue of fees. So it was addressed in the District Court, and the District Court, we think, ruled appropriately. Did, I didn't read the District Court's order to specifically consider the issue of jurisdiction. Can you point me to where it specifically finds that it has jurisdiction? Well, I think it's implicit in that footnote in the sense that if it's an ancillary issue, then the original judgment is not pertinent, nor is the merits appeal. And so I think it was, I think it was posed by the appellants as an issue of the mandate rule or the waiver rule. And so it was addressed in that fashion with respect to the Moody case. Can you point us to any case with similar language in a judgment, where this court or any court found that despite the language in the case, the fee issue was still ancillary? In other words, the cases that you cited to us in your brief did not appear to involve judgments that address the fee issue in the same manner as here. Can you, can you point us to a case with a similar judgment? I hope I'm not mistaken, but I believe Moody does. It's almost exactly the same wording. And I think we stopped there with Moody because it was so on point. But I believe Moody did, the original order in Moody said no fees, no costs. And that's, that was why we thought the case was directly on point. But other than Moody, none come to mind. But I think Mr. Edmonds, before you pivot, I think Mr. Odom has a question. Judge Odom has a question. Yes. Help me, walk me through your understanding of Rule 54. So I, I take it, you recognize that there's a 14 day deadline from the entry of judgment, unless there's a statute or court order that otherwise for you to file your motion for fees. So my understanding that your view of how Rule 54 works in this case is that the court, the district court, when you went back the second time was effectively granting you an extension of that deadline under 54 D2B. That's correct. We actually, well, we filed a timely motion, which was denied. And there's a, there's a case that's cited in, I don't have it on top of my head, but it's cited in the district court's quarter denying the, the fee motion with leave to refile. And it's a case that collects other cases from the fifth circuit. And my understanding, and based on the cases we've seen, is that it's a fairly common practice for district courts to defer the issue of fees until the merits appeal, wisely, I think, defer the issue of fees until the merits appeal has completed and then reset that deadline. And I believe there's a discussion in that case about when Rule 54 was amended, that was one of the specific things it was amended to do. And it seems like a very prudent thing to do. So district courts don't waste their time deciding fee motions that may be moot if the appeal merits appeal is successful. That makes perfect sense to me. So while we're talking about compendiums of cases or compendia federal rules of civil procedure, and in section 3950.4, Wright and Miller says the following, if the court that would be the district court orders an extension on a Rule 54 D2 motion, which I take your answer to my previous question to be, that's this case, but a notice of appeal has been previously filed and become effective, the extension would be a nullity, end of quote. Well, with all deference to my former professor, Wright, I don't know exactly what his citation is for that. But I don't know whether you would call it an extension or not. It was denied. It was denied the extension, right? Because Rule 54 would otherwise bar it. You'd already filed one motion and had it denied. The previous judgment that you tried to cross appeal had denied it. So the only way you're going to get through Rule 54 in this case is to get a Rule 54 D2B extension, right? I don't think that's something that's been, maybe I missed it. Maybe that's, I don't think it's been raised by the appellants that it was untimely, or that it was somehow void because of what's mentioned right now. It's the first time I'm hearing it. But that doesn't seem consistent at all with the amendment to Rule 54. And I don't know whether that is an artifact in Wright and Miller that precedes the amendment to the rule. It may very well be. But I think the case law... I'm reading the current, this is the 2024 supplement that I'm reading from the live version of Westlaw. It's a jurisdictional question. So obviously we have to address it. It doesn't matter if they said it, didn't say it, actively agreed with you that it was in fact timely. It goes to the jurisdiction of the district court. So we have to deal with it. Yeah, I guess I would fail to see, again, with all due deference to the late professor Wright, I fail to see how if it's an ancillary proceeding. I understand the notion that an appeal might divest jurisdiction on other issues that are on the merits, but I'm not following their reasoning that it would over something ancillary to it, which is the Rule 54 fees. The ruling is quite patent, which is that it is ancillary until you choose to cross appeal it. And once you cross appeal it, like that's your choice, right? You saw the words in the motion. You could have filed a motion to amend the judgment. You could have sought relief in the district court when you saw that it said fees were denied. You didn't. You chose to cross appeal. Here we are. And we withdrew the cross appeal. So it became an oldie. I think you are correct. Certainly if this is a jurisdictional issue, it doesn't matter. It was raised. We'll consult as a panel, but we may give an opportunity for both sides to address what's being raised. It sounds like you're not quite ready to address it. I didn't mean to cut off Judge Odom if he had wanted to pursue that further, but I think that's one way, give you an opportunity to, since you seem unfamiliar with what he's talking about. Thank you. Let me focus down on the issue of the adequacy of the court's order and what I would. Let me stop you there. I'm getting the impression that maybe I did cut off Judge Odom prematurely. I didn't mean to, because I think what I suggested to him doesn't interfere with continuing questioning him on him. Judge Odom, I invite you to re-engage. My apologies if I cut you off prematurely. Mr. Edmonds, back to you. Thank you, Your Honor. So with respect to the adequacy, we would direct the court to the definitely in our brief. It's 789 F. 3rd 573. And in the Hunt case, specifically references another case from this court. It's Bridgman v. Array Systems, which is 325 F. 3rd 572. And the Hunt case cites with approval Bridgman's award of fees under the Copyright Act, which is not very different than the award of fees in this case in terms of its level of explanatory detail. So now we're dealing with Fogarty, not so much with Johnson, but we're dealing with Fogarty. And Fogarty relies on another case called Hensley v. Eckhart, which is 461 U.S. 424, which speaks to a broad equitable discretion of district courts to award fees that are reasonable and consistent with the purposes of the Copyright Act. And in Bridgman, this court said, the court cited, and we are confident, applied the relevant authorities. It explicitly stated its award promotes the purposes of the Copyright Act. By necessary inference, the higher amount sought by Array was unreasonable. And summary judgment was readily granted. And the district court acted within its discretion in awarding fees. In that case, it awarded a portion of the fees requested. In that case, it was another round number. But we cited a number of cases that say the courts didn't, that there shouldn't be a mini trial. Courts should not become green eye shade accountants. And that there's certainly adequate evidence in the record. And I think the court should be mindful of the limited challenges that the appellants made to the fee request. They didn't challenge the hourly rates, which many of them had been discounted for purposes of the motion. They didn't challenge the amount of hours worked. And a number of lawyers were excluded, preemptively excluded from the fee request to avoid charges of redundancy. So they didn't challenge the amount of the hourly rates. They didn't challenge the amount worked. What they did challenge was the segregation evidence. And they said most of the fees were for unsuccessful motions. But the district court was well aware, as we pointed out to this court, the unsuccessful motions were motions that were denied as moot because of this successful motion, which ended the case. So they weren't unsuccessful by any means. They were just simply denied as moot. And in view of the limited challenge that the appellants made to the fee claim, it's not surprising the district court did not take some issues up that did not seem to be in dispute. But under Bridgeman and Hahn, we respectfully submit that the district court's analysis is adequate. It cited the correct authorities. It cited authorities, which to the extent the court would require a lodestar, it cited geophysical, which the entire geophysical case is on lodestar. It only cited a limited number of cases. And the level of detail is just as adequate, if not more, than in Bridgeman and Hahn. And so we submit that it is adequate. With respect to the critique of counsel for appellants, and it seems we would say that their argument seems somewhat inconsistent. And it was the same kind of inconsistent argument to the district court. The thrust of their argument to the district court was, look at how much they worked on this case. It can't have been that meritless. And so they really were kind of more embracing the amount of work that was done and challenging the amount of work that was done. Now I hear my friend challenging the amount of work that was done. But as the court can see from the summary judgment briefing, there's testimony, deposition testimony cited in the summary judgment briefing. And so the record had to be developed. And part of the district court's and part of this court's determination that there was an express license was the testimony by the plaintiff, Ms. Loeb DeFever, that she acknowledged a number of, she made a number of admissions that essentially acknowledged the express license. And it also took a development of the evidence in the case to develop the scope of the express license. Because as this court's opinion that affirmed it pointed out, we have a dispute over the scope. And so there had to be a record developed over how many would be covered by it, what acts would be covered by it. And so it took a significant amount of discovery. It's not a five-pager as my friend suggests. And also the case, this is a case in which the plaintiff was requesting hundreds of millions of dollars from the various defendants. And in a case in which amounts of money like that, $469 million was being requested variously from the defendants. In a case like that, the defendants have no choice but to take it seriously and would have no choice to file, to develop the record with evidence. And as my friend pointed out in their brief, there were 190 pages of Rule 12 briefing. There were 450 pages of summary judgment briefing. A significant amount of work was done on the case. Yes. Mr. Edmonds, that seems to go to the issue of whether an award of fees was appropriate. Could you please address the calculation of the appropriate amount to be awarded? Yes. And I had pivoted to that last issue, which was the third issue he raised. So with the calculation, we respectfully submit the Hunt case and the Ridgemont case that it relies on. And those cases in this court, in copyright cases, in which the Fogarty factors and then by implication Hensley is applied, don't require that level of detail. And he cited a number of other cases that point to that there is district courts have a wide latitude and that they don't have to get into detail to explain them. But the level of detail and it's saying the calculations here were no different than those in Ridgemont, which was affirmed by this court. The court's not required to go in to that level of detail. So the level of detail, we all see it in the opinion. He came up with a number that was approximately a third of what was requested. And as pointed out in Ridgemont, the court rejected the fees that it deemed unreasonable, thus accepting the fees that it deemed reasonable. It just didn't do more explicit calculations. Well, did it do any calculation? I'm struggling to figure out where the 500 number comes from, from the district court's four page order. Well, the fee request was supported by approximately a million five in fees and consistent with the Ridgemont case, the district court did not provide its calculations. It awarded a modest subset of those fees and did not, there are no other calculations in that, but we say Ridgemont and Hunt allow that to be done, Your Honor. Anything further, Judge Ramirez? All right, Mr. Edmonds, thank you. Mr. George, I think you have three minutes left. Anyway, rebuttal time. Yes, Judge Suffolk, I'm going to start where Mr. Edmonds ended. That's always the fastest. So one of the things that Judge Edmonds said is, well, he heard Judge Edmonds listen to me. Mr. Edmonds said just generally was, you know, well, he did find it. It's a third. Rule 52a says the court must find the facts specifically and state its conclusions of law separately. There's no facts of the $500,000 specifically found. It just says here's 500 grand. There's no facts specifically found. And the reason that is important to get to possibly your next question, Judge Suffolk, is that's how we appeal stuff. We appeal things by saying this is what the court found or the jury found. We disagree for X and Y reasons. Here we just have $500,000, period, end of story, without any rhyme or reason. And that's completely volative of Rule 52. Now we go to Judge Mr. Edmonds saying, well, look, we had to get into discovery. We had to do this. We had to do that. No, there's no even finding by the judge that it's vague, that it's ambiguous, that parole evidence is required. If it's vague, if it's ambiguous, if parole evidence is required, as Mr. Edmonds said today, literally just told us all this discovery was necessary, then how can it be objectively unreasonable under Fogarty? There were 100-plus pages of motion to dismiss briefing that we want, that we were successful on going forward. And then we had to, according to Mr. Edmonds, go into all this discovery to figure out the scope of this express license. That makes it objectively reasonable. Judge Hanks did not find that our claims were under Fogarty. He really only concentrated on the objectively unreasonable element. Well, Mr. Edmonds has just told you that all of this factual investigation, all of this determination was necessary and that Judge Hanks relied on it. By the very arguments we have today, Your Honor, we find that there are, we have to conclude that the claims were objectively reasonable. He says, well, they're objectively unreasonable because of the amount of money we sought. Well, that's not the standard. There's no standard in Fogarty that says if you request too much money, then that's the determination of whether or not it's objectively unreasonable was how much money you've asked for. We never tried this case, Judge, judges, sorry. We never tried this case. We never actually asked the jury for an amount of money. So saying what we pled for and what we were going to ask the ultimate finder of fact for is a red herring. The truth is the Copyright Act allows us to ask for any and all revenue, and then it flips the burden to the defendant to prove any and all expenses so that we can get to the profit model. The revenue here, because they kept flipping this property and flipping this property and flipping this property, the revenue was astronomical for this elderly facility home. Therefore, we did exactly what we were to do under the rule. We asked for the amount of money that the revenue that had been generated as a result of this product. Going back to the questions, I'm trying to address all the questions that your honors asked. I do completely concur with Judge Oldham. The filing of the appeal made the extension a nullity. And let's not forget the fact that as Mr. Edmonds told us, what actually happened here was Judge Hanks denied the fee request and said, I'll take it up later. That should have been appealed. You should have appealed that and said, no, we need our fees awarded. Now we need the judgment amended because the judgment as it stands says each party bears their own fees and costs. So unless you amend that judgment to say the parties don't bear their own fees and costs, that judgment needed to be appealed. In fact, that judgment was appealed and the appeal was given up. Right or wrong, it was appealed and that appeal was dropped by the defendants. There was no extension granted under 54 D2B. There was no extension granted even if there was. It's a nullity because we filed our notice of appeal and Mr. Edmonds filed his notice of appeal. The truth is here that Mr. Edmonds did exactly what he should have done. He appealed the district court's finding of no fees and then he dropped that appeal. He must live with that decision today. I believe that covers all our issues, Your Honor. We've got about 30 seconds left for any questions, but that covers all the issues, I believe. Looks like there are no questions. We appreciate the gift of 20 seconds now. Thanks to both counsel for illuminating the issues for us. And that concludes this session and I guess this panel is adjourned. Thank you so much, Your Honors, and thank you for accommodating my request a couple weeks ago. Certainly. Thank you, Your Honors.